UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMANDA HEBDEN,

    Plaintiff,

v.                                      Case No.: 8:18-cv-1063-T-33AAS

RONALD ANDERSON,

    Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Ronald Anderson's Motion to Dismiss (Doc. # 19), filed on July 20, 2018. Plaintiff Amanda Hebden responded on August 3, 2018. (Doc. # 24). For the reasons that follow, the Motion is denied.

**I.    Background**

Anderson owns a six-unit rental property in Treasure Island, Florida. (Doc. # 1 at ¶ 8). In 2012, Hebden — a white woman — and her roommate Karen Wessel — another white woman — moved into one of Anderson's rental units. (Id. at ¶ 11). Typically, "potential tenants are required to fill out an application for lease" and Anderson would "do a background check via the internet." (Id. at ¶ 10). Yet, while Hebden and Wessel filled out an application, Anderson told them no

1

background check was done. (Id. at ¶ 12). Hebden and Anderson made a verbal modification to the lease to allow Hebden to pay her rent on the third day of the month, rather than the first. (Id. at ¶ 14).

After the one-year lease agreement ended, Wessel moved out, but Hebden stayed in the unit under a month-to-month tenancy. (Id. at ¶¶ 20-21). Then, Jeff Perro — a white man — moved into the unit as Hebden's new roommate in April of 2014. (Id. at ¶ 22). Perro was not required to fill out an application or undergo a background check. (Id. at ¶ 23). Similarly, when Hebden's upstairs neighborhood got a new roommate — a white woman — no application was required and no background check was run. (Id. at ¶¶ 25-26).

During this time, the "relationship between Hebden and Anderson began to deteriorate . . . due to differing opinions, and occasional arguments, surrounding the events that led to the deaths of Trayvon Martin and Michael Brown." (Id. at ¶ 28). "Hebden was also consistently offended by Anderson's disparaging remarks regarding African Americans and repeated use of racial slurs." (Id. at ¶ 31). "Hebden requested that Anderson not [] use the 'N-word' in her presence, and that he also not return to her unit." (Id. at ¶ 32).

Eventually, Perro moved out. Hebden acquired a new roommate Michael Peart — a Jamaican-American man — on June 4, 2015. (Id. at ¶ 39). Peart moored his boat at the property's dock and began parking in the property's parking lot. (Id. at ¶ 40).

According to the Complaint, Anderson reacted poorly to Peart's arrival. Anderson began to demand Hebden pay the rent on the first day of the month, instead of on the third as Anderson and Hebden had previously agreed. (Id. at ¶ 42). Additionally, in late July and early August 2015, Anderson twice "left letters sealed inside zip-lock baggies on Roommate Peart's car during the overnight hours for him to find the next morning — 'KKK style.'" (Id. at ¶¶ 43-48). In those letters, Anderson requested Peart "fill out an enclosed application for residency (no signature necessary), and to contact Anderson regarding Roommate Peart's boat that was moored to the dock . . . as well as to address the issue of 'some confusion as to assigned parking spaces.'" (Id. at ¶¶ 45, 48).

Peart did not respond to the letters and "did not fill out the application for residency because he thought the only reason it was being required of him was due to Anderson being a former police officer" and that Anderson would use Peart's

information "for some sort of vendetta or agenda." (Id. at ¶¶ 47, 50). But Peart did remove his boat from the dock on August 17, 2015. (Id. at ¶ 54).

Then, on August 18, 2015, "Hebden received a notice of non-renewal addressed to both herself and Roommate Peart from Anderson, providing that both were to vacate the property by September 30, 2015." (Id. at ¶ 55). So, on September 21, 2015, "Hebden filed a housing discrimination complaint with the Pinellas County Office of Human Rights ('PCOHR') alleging violations of 42 U.S.C. § 3604(a) and (b)." (Id. at ¶ 58). After that, Anderson initiated eviction proceedings against Hebden on October 9, 2015. (Id. at ¶ 59).

Meanwhile, the PCOHR's investigation continued. Then, on May 3, 2016, the PCOHR "issued a Determination of Reasonable Cause and Charge of Discrimination ('Charge'), pursuant to Pinellas County Code §§ 70-140 and 70-141, charging Anderson with engaging in unlawful housing discrimination on the basis of race, in violation of the Fair Housing Act." (Id. at ¶ 63). "On January 22, 2018, Hebden elected to commence a civil action for Anderson's discriminatory housing practice pursuant to 42 U.S.C. § 3613(a)(1)(A)." (Id. at ¶ 64).

Hebden then initiated this action on May 1, 2018, asserting claims for race discrimination and retaliation

4

under the Fair Housing Act, 42 U.S.C. §§ 3604 and 3617, Florida's Fair Housing Act, Fla. Stat. §§ 760.23 and 760.37, and the Pinellas County Code, §§ 70-176 and 70-183. (Doc. # 1). Anderson moved to dismiss on July 20, 2018 (Doc. # 19), and Hebden has responded. (Doc. # 24). The Motion is ripe for review.

## II. Legal Standard

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan

v. Allain, 478 U.S. 265, 286 (1986). "The scope of review must be limited to the four corners of the complaint" and attached exhibits. St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002).

**III. Analysis**

Anderson raises two arguments for dismissal: first, that the statute of limitations has passed and, second, that the Complaint fails to state a claim for any count. The Court will address these arguments separately.

Additionally, the parties agree that the federal Fair Housing Act, the Florida Fair Housing Act, and the Pinellas County Code mirror one another, so the same legal arguments apply to all counts of the Complaint. (Doc. # 19 at 1-2; Doc. # 24 at 4); see also Loren v. Sasser, 309 F.3d 1296, 1299 n. 9 (11th Cir. 2002)("The Florida Fair Housing Act contains statutory provisions that are substantively identical to the federal Fair Housing Act.").

    A.    **Statute of Limitations**

Anderson argues that the statute of limitations has run on Hebden's claims. (Doc. # 19 at 3-4). He emphasizes that Hebden's "Intake Questionnaire" for her administrative housing discrimination complaint states that the last act of

6

discrimination occurred on August 18, 2015. (Id. at 3; Doc. # 1-12 at 6).

The statute of limitations for Fair Housing Act claims is two years. See 42 U.S.C. § 3613(a)(1)(A) ("An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice."). But, in calculating the statute of limitations for housing discrimination claims, courts do not count the days in which administrative proceedings were pending. See 42 U.S.C. § 3613(a)(1)(B) ("The computation of such 2-year period shall not include any time during which an administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice."). Here, the administrative proceeding lasted 226 days. Therefore, by Anderson's calculation, the statute of limitations ran on March 31, 2018 – before Hebden initiated this action on May 1, 2018. (Doc. # 19 at 4).

But Hebden points out that her Complaint alleges discrimination that occurred after August 18, 2015. Specifically, she highlights that Anderson initiated an eviction proceeding against her on October 9, 2015. (Doc. #

7

24 at 1-2). And she notes that her actual administrative housing discrimination complaint specified that the discriminatory conduct had last occurred on "September 3, 2015, and is continuing." (Id. at 2; Doc. # 1-12 at 3). Because the housing discrimination complaint specified that the discrimination was continuing and the Complaint in this case pleads a discriminatory event on October 9, 2015, Hebden insists that the statute of limitations began to run on October 9, 2015. (Doc. # 24 at 2).

Thus, Hebden argues – and the Court agrees — the two-year statute of limitations would have run on October 9, 2017, but for the administrative proceeding. Adding the 226 days during which the administrative proceeding was pending, the statute of limitations ran on May 23, 2018. (Id. at 3). Because Hebden initiated this action on May 1, 2018, her claims are not time-barred.

### B. **Failure to State a Claim**

Under the Fair Housing Act, it is unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race" or to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or

8

in the provision of services or facilities in connection therewith, because of race." 42 U.S.C. § 3604(a)-(b). Additionally, Section 3617 of the Fair Housing Act provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right" protected under the Fair Housing Act. 42 U.S.C. § 3617.

Anderson argues the Complaint should be dismissed for failure to state a claim of housing discrimination because Hebden "fails to set forth facts which establish that her roommate was discriminated against because of race, that she was discriminated against because of her roommate's race, and therefore [Hebden] is not an 'aggrieved person' and is not entitled to relief as to any of her claims." (Doc. # 19 at 5). He emphasizes that he required Hebden to fill out a rental application before she moved into the apartment, just as he requested Peart submit an application. (Id. at 6). Therefore, Anderson reasons, the Complaint does not plead facts to support that Peart's race was the motivation to have Peart submit an application. (Id.).

Furthermore, Anderson argues that Hebden's "own allegations instead establish a claim that [Hebden] and her roommate failed to comply with the rental policies of

9

Anderson, and that is why they were asked to leave the property in August 2015." (Id.). According to Anderson, Hebden "was given a Notice of Non-Renewal of Lease on August 18, 2015" because "her roommate [Peart] refused on two occasions to complete a rental application as requested by Anderson, and failed to contact Anderson regarding the boat that was moored at Anderson's dock." (Id. at 8). Therefore, Anderson contends that Hebden has failed to plead a claim for either discrimination or retaliation based on the notice of non-renewal and subsequent eviction.

The Court disagrees with Anderson. Taking all the Complaint's allegations as true, Hebden has stated a plausible claim that Anderson discriminated and retaliated against her. Although Hebden had filled out an application when she moved in in 2012, she alleged that two other white individuals moved into other apartments on the property but were not required to apply or did not have to undergo background checks in 2014. (Doc. # 1 at ¶¶ 23, 25-26). Yet, Anderson required an application from Peart in 2015. (Id. at ¶¶ 45, 48). Additionally, she has alleged that Anderson moved up the due date of Hebden's rental payments in retaliation for Hebden's opposition to Anderson's alleged racist comments and for Hebden's choosing Peart as her roommate. (Id. at ¶¶

10

32, 39, 42). Finally, she alleges Anderson initiated eviction proceedings against her in retaliation for Hebden's filing an administrative housing discrimination complaint. (Id. at ¶¶ 58-59).

Taking these allegations as true and favoring Hebden with all reasonable inferences, the Court finds that Hebden has stated claims for discrimination and retaliation. Therefore, Anderson's Motion is denied.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Ronald Anderson's Motion to Dismiss (Doc. # 19) is **DENIED.** Anderson's Answer is due fourteen days from the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 20th day of August, 2018.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE